# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILLENIUM HOME MORTGAGE LLC,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 19-1238 |
| | : | |
| **DANIEL THIERRY,** | : | |
| *Defendant.* | : | |

## MEMORANDUM

## I.  Introduction

This suit arises from Defendant Daniel Thierry's alleged diversion of leads generated while employed by Plaintiff Millenium Home Mortgage, LLC to his future employer. Based on these allegations, Plaintiff brought suit against Defendant for, among other things, violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Defendant moved to dismiss the Complaint based in part on the ground that Plaintiff has not suffered a cognizable loss under the CFAA and thus has failed to state a recoverable claim. For the reasons set forth below, Defendant's Motion to Dismiss (ECF No. 6) will be granted.

## II.  Background[1]

In 2011, Defendant made his initial capital contribution in Millenium and acquired a 5% interest in Plaintiff, with a vesting schedule by which he could

---

[1] The following facts recited are those alleged in the Complaint.

1

ultimately own up to 20% of the company by December 31, 2013. ECF No. 3 at ¶ 8. On January 1, 2014, Defendant was added as a member of Plaintiff. *Id.* at ¶ 9. From 2011 until October 2017, Defendant maintained dual roles as a member and also as an employee and was compensated for originating loans and received profit distributions allocated at each year end and approved by all Millenium Home Mortgage, LLC members. *Id.* at ¶ 10.

In December 2013, Plaintiff decided to make additional contributions to working capital in order to satisfy net worth requirements of certain investors who purchase its loans. *Id.* at ¶ 11. At the time, Defendant maintained an investment account with Janney Montgomery Scott ("JMS"), valued at approximately $100,000. *Id.* at ¶ 12. Defendant transferred ownership of this JMS investment account to Plaintiff, representing his contribution to working capital. *Id.* at ¶ 13. Following this transfer of ownership, JMS sent monthly account statements to Plaintiff, naming "MILLENIUM HOME MORTGAGE LLC" as the owner of the account. *Id.* at ¶ 14. Defendant is still a member of Plaintiff, with a 20% membership interest. *Id.* at ¶ 15.

Plaintiff believes that Defendant started discussions with Embrace Home Loans ("Embrace"), a competitor to Plaintiff, about accepting a position in September 2017. *Id.* at ¶ 16. On October 6, 2017, Defendant provided notice to Plaintiff that he was voluntarily terminating his employment effective

immediately. *Id.* at ¶ 17. That same day, Defendant emailed at least one Millenium file related to a customer to Embrace regarding a proposed $203,000 loan ("Customer X"). *Id.* at ¶ 18. The next business day, Defendant commenced employment with Embrace. *Id.* at ¶ 19.

Internal records reflect that in the months leading up to his departure, Defendant generated nearly 60 leads for potential Millenium loans that were never closed by Millenium. *Id.* at ¶ 20. At least three of the leads generated for Millenium by Defendant between September 8 and October 1, 2017, were closed by Embrace in November 2017. *Id.* at ¶ 21. Plaintiff believes that many of the other leads generated by Defendant while he was employed at Millenium were diverted to Embrace and subsequently closed by Embrace. *Id.* at ¶ 22. Plaintiff believes its lost profits based on Defendant's "diversion of loans could potentially exceed $350,000." *Id.* at ¶ 23.

After Defendant left Millenium for Embrace, Customer X contacted Millenium to report that Defendant could not handle his loan at Embrace and requested that Millenium continue to work with him to close the loan. *Id.* at ¶ 24. Plaintiff alleges that "all of the financial information related to Customer X had either been deleted from the Millenium system or had never been saved to the Millenium system by [Defendant], in violation of Millenium policies." *Id.* at ¶ 25.

Plaintiff believes that confidential and proprietary information relating to its

3

customer lists and leads, along with other trade secrets, were provided to Embrace by Defendant. *Id.* at ¶ 26. Though Plaintiff believes that in order to divert these leads and ultimately to close the loans on behalf of Embrace, Defendant would have needed information about these borrowers and their personal financial documents including paystubs, W-2s, tax returns, asset statements, driver's licenses, social security cards or passports, and possibly credit reports run by Defendant while he was still working for Millenium and "data from Millenium's client data base and other borrower information that should have been saved to Millenium's system," Plaintiff does not go so far as to explicitly allege that these referenced documents or information were necessarily taken from Millenium's computer system. *Id.* at ¶¶ 27-28.

In November 2017, Defendant contacted a managing member of Millenium requesting a buyout of his membership interest and noting that he was planning to liquidate the money held in the JMS investment account that he previously conveyed to Millenium as a contribution to working capital. *Id.* at ¶ 29. In response, the managing member informed Defendant that until an agreement could be reached on the return of Defendant's capital, he was not permitted to liquidate any accounts held in the name of Millenium, including the JMS account. *Id.* at ¶ 30. Contrary to this instruction and without the consent of any other member of Millenium, Defendant contacted JMS to liquidate the account and receive direct

payment of over $120,000, causing Millenium's "net worth to drop below the required threshold, creating the potential for investors to discontinue buying Millenium loans." *Id.* at ¶¶ 31-32.

In December 2018, Defendant filed a complaint against Millenium and Millenium's operating manager for shareholder oppression and breach of fiduciary duty. That case is still pending in New Jersey Superior Court. In March 2019, Plaintiff filed suit in this Court asserting the following claims: violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* (Count I); conversion of the JMS account (Count II); conversion of confidential information (Count III); and breach of fiduciary duty and duty of loyalty (Count IV).

Defendant moves to dismiss the Complaint arguing, among other things, that Plaintiff has not suffered a loss recoverable under the CFAA. ECF No. 6-1. The Court agrees. Because Plaintiff's CFAA claim fails, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims. Accordingly, the Complaint is dismissed in its entirety.

### III. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In rendering a decision on a motion to

dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (internal quotations omitted)). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. Discussion

The CFAA prohibits a person from "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . .

6

information contained in a financial record of a financial institution" . . . "or information from any protected computer." 18 U.S.C. § 1030 (a)(2)(A) and (C). Although the CFAA is primarily a criminal statute, it provides a private cause of action in particularized circumstances. Under § 1030(g), "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" . . . "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030 (g).

Plaintiff not only fails to allege which of the five enumerated factors is present in this case in order to allow civil redress under the CFAA, but also wholly fails to even reference or allude to the civil section of the statute upon which it bases the gravamen of its Complaint and the only claim over which the Court has original jurisdiction, the CFAA claim. Indeed, Plaintiff only references the criminal section of the statute. *See* ECF No. 3 at ¶ 34. Consequently, the Court must independently review the statute to determine whether Plaintiff has plead a cognizable civil claim under the CFAA.

Factors II through V are inapplicable to the case at hand on their face. Thus, Plaintiff's civil claim is only cognizable if Factor I is present. Factor I is present if the offense caused "loss to 1 or more persons during any 1-year period . . .

aggregating at least $5,000 in value." 18 U.S.C. § 1030 (c)(4)(A)(i)(1). Damage is defined by the statute as "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030 (e)(8), and further limited by the statute to include only economic damages when Factor I is involved. 18 U.S.C. § 1030 (g). "Loss" is defined by the statute as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030 (e)(11).

Defendant argues, among other things, that Plaintiff's CFAA claim should be dismissed because Plaintiff has not suffered a loss recoverable under the CFAA. ECF No. 6-1 at p. 15. The crux of Plaintiff's case is that it believes Defendant diverted leads he generated while employed by Plaintiff to his future employer, Embrace. ECF No. 3 at ¶ 22. Accordingly, Plaintiff alleges that its damages under the CFAA include the "lost profits to Millenium based on [Defendant]'s diversion of loans [which] could potentially exceed $350,000" "through lost customers and good will." *Id.* at ¶¶ 23 & 41.

This type of loss has been routinely found by courts to not be recoverable under the CFAA because it is not caused by interruption of service. *See Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018) (finding

8

that Plaintiff could not recover under the CFAA for lost revenue caused by misappropriation of confidential information); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014) (finding that cognizable CFAA loss may include lost revenue incurred because of an interruption of service but does not include claims for lost business opportunities, damaged reputation, and other missed revenue opportunities); *see also Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 478 (S.D.N.Y. 2004), aff'd, 166 F. App'x 559 (2d Cir. 2006) (holding $10 million in lost profits caused by misappropriation of confidential data was not recoverable under the CFAA because it was not connected to an interruption of service); *Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 252 n. 12 (S.D.N.Y. 2000), aff'd 356 F.3d 393 (2d Cir. 2004) (finding that the loss of business due to defendants' eventual use of the information, rather than a loss of business because of computer impairment, was too far removed from computer damage to count toward the jurisdictional threshold); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) ("In a broader sense, this type of damage seems far removed from the damage Congress sought to punish and remedy in the CFAA—namely, damage to computer systems and electronic information by hackers.").

As Plaintiff has not suffered a cognizable loss as defined by the CFAA, Plaintiff is therefore unable to allege that any of the factors required to bring a

private cause of action under the statute is present in this matter. Accordingly, because Plaintiff has not suffered a cognizable damage for which a civil remedy is available under the CFAA, Count I will be dismissed.

The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted). The Court, having considered judicial economy, convenience, and fairness to the parties involved, sees no reason to exercise jurisdiction over the remaining state-law claims in light of the CFAA claim's dismissal. Accordingly, Counts II through IV are dismissed as well.

V. **Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss will be granted. An appropriate Order follows.

DATED: 8-26, 2019

BY THE COURT:

CHAD F. KENNEY, J.